RICHARD L. GREGORY, Appellant, v. WILLIAM C. SUHR, Appellee.

No. 43422.

JUNE 19, 1936.

F. E. Northup, Harry Druker, and Boardman & Cartwright, and Freeburn & Baker, for appellant.

C. D. Reed, Charles E. Wittenmeyer, and Putnam, Putnam, Fillmore & Putnam, for appellee.

KINTZINGER, J.—The collision in question took place about midnight of March 3, 1934, on Highway No. 6, about 15 miles west of Davenport. Plaintiff was riding as a guest in the front seat with Floyd Craig, the owner and driver of a Chevrolet car, traveling west on said highway. Defendant was driving a Ford car in an easterly direction at the time of the collision. Owing to a foggy condition of the atmosphere, the visibility was poor, but the lights of an approaching car could be seen for a distance of about 300 feet, and an automobile could be distinguished about 50 feet away. Each car was driven at a speed of about 20 miles an hour. Evidence on the part of plaintiff tended to show that at the time of the collision, his car was traveling on his right or north side of the pavement, and that defendant's car was traveling on his left and also the north side of the pavement, while the evidence on the part of defendant tended to show that plaintiff's car was on the south side of the pavement. The occupants of both cars testify positively that their respective cars were traveling upon their extreme right side of the pavement. The occupants in plaintiff's car testified that there were no lights on the defendant's car, while the occupants of defendant's car testified they were unable to see any lights on plaintiff's car. The occupants of each car testified that the headlights on their car were lit. The driver of plaintiff's car testified that he was not able to see defendant's car as it approached until it came within about 30 feet of his car, when it was too late to avoid the collision. Likewise, the defendant testified that he didn't see the plaintiff's car until an instant before the collision, and was unable to avoid it.

The plaintiff testified that he saw no lights on any approaching car; that he had been looking ahead, and just at and before the time of the collision, he was looking out of the right window

of the car, watching the north edge of the pavement, and didn't notice the approaching car from the west until the impact.

The evidence also shows that plaintiff sustained severe injuries as a result of the collision, and as a result of which he was disabled and required hospital and medical attention.

At the conclusion of the evidence, the case was submitted to the jury which returned a verdict in favor of the plaintiff in the sum of $4,995.80. Thereupon, defendant filed a motion for a new trial, based chiefly upon errors in giving certain instructions. This motion was sustained and plaintiff appeals.

The chief error relied upon by defendant in his motion for a new trial was the giving of instruction No. 14, in which the court said:

"14. It is the law of this state that the driver of a motor vehicle *shall keep the same under proper control at all times*. It is for you to say * * * whether or not the defendant driver did keep his automobile *under proper control at all times*, and that upon approaching the place where the accident occurred *he did have his car under control so as to avoid collision* with others using the highway, and whether or not his failure to do so, * * * was a direct cause of the accident.

"If you find from all the evidence that the defendant * * * *failed to keep his motor vehicle under proper control* * * *, and *that such failure* * * * was a direct cause of the accident * * *, and * * * plaintiff was not guilty of contributory negligence, then the defendant would be liable for * * * damages * * *. But, if you find * * * *that the defendant did have his car under control* * * *, then the defendant would not be guilty of negligence * * *."

The complaint made against this instruction in appellee's motion for a new trial is (1) that it imposes an absolute duty on the defendant *to avoid the collision, whether he could do so in the exercise of ordinary care* or not, and (2) because the court does not define the meaning of the term "under control" in it or any of the other instructions given.

Defendant contends that the terms "under control" or "under proper control" have a well defined meaning under the decisions of this court, and that by those terms is meant, such control as would permit the defendant to stop his car with a reasonable degree of celerity, and that the driver of an automobile is

required *to exercise ordinary care* to have his car under such control. Carruthers v. Campbell, 195 Iowa 390, 192 N. W. 138, 28 A. L. R. 949; Looney v. Parker, 210 Iowa 85, 230 N. W. 570; Duncan v. Rhomberg, 212 Iowa 389, loc. cit. 400, 236 N. W. 638; Hanson v. Manning, 213 Iowa 625, 239 N. W. 793; Morse v. Inc. Town, 213 Iowa 1225, 241 N. W. 304; Knutson v. Lurie, 217 Iowa 192, 251 N. W. 147; Fry v. Smith, 217 Iowa 1295, 253 N. W. 147; Shutes v. Weeks, 220 Iowa 616, 262 N. W. 518.

In Carruthers v. Campbell, 195 Iowa 390, loc. cit. 392, 192 N. W. 138, 139, 28 A. L. R. 949, this court said:

"Again, it is said that plaintiff was at fault in not having his car under control. The phrase 'having his car under control' does not necessarily mean ability to stop instanter, under any and all circumstances. Such a rule would be impossible of observance. A car is 'under control' within the meaning of the law, if it is moving at such a rate and the driver has the mechanism and power under such control that it can be brought to a stop with a reasonable degree of celerity. In the case before us, it does not appear to any degree of certainty that either car was not under reasonable control."

In Looney v. Parker, 210 Iowa 85, loc. cit. 90, 230 N. W. 570, 572, the lower court instructed the jury that:

"The driver of a car following another car has a duty to perform, in being prepared for a sudden stop by the car ahead of him, and keep at such a distance and to maintain such control of his car as to enable him to stop without hitting the car ahead of him. Having his car under control does not necessarily mean ability to stop instanter, under any and all circumstances. A car is under control, within the meaning of the law, if it is moving at such a rate of speed and the driver has the mechanism and power under such control that it can be brought to a stop within a reasonable degree of celerity."

In that case this court said:

"The first part of the instruction imposed upon the driver the duty of exercising such control as would avoid collision, whether he was negligent or not. *The driver's duty was to exercise reasonable or ordinary care.* Strever v. Woodard, 160 Iowa 332, 141 N. W. 931, 46 L. R. A. (N. S.) 664, 42 Corpus

Juris, 949. The instruction was confusing, self-contradictory and misleading.'' The case was reversed.

In Knutson v. Lurie, 217 Iowa 192, 203, 251 N. W. 147, 153, the court instructed the jury that if the driver discovers, or in the exercise of reasonable care, could have discovered any vehicle on the highway or approaching the highway so that there was danger of a collision, ''it is his duty to reduce the speed of his car so in case such vehicle enters into his path, and there is danger of collision, he can bring his vehicle to a stop and avoid injury.''

In discussing that instruction, this court, loc. cit. 204, said:

''It is apparent that the district court therein imposed upon appellant Mrs. Lurie more than a duty to use reasonable or ordinary care. The instruction of the district court in the case at bar required Mrs. Lurie, first, to reduce the speed of her car whether by reasonable or ordinary care she could do so or not; and, second, the instruction required Mrs. Lurie to stop her car and avoid the injury even though she could not do so by the exercise of reasonable or ordinary care. It was the duty of Mrs. Lurie at all times to use reasonable or ordinary care. What is reasonable or ordinary care always must be determined by the facts and circumstances of the case. Obviously the instruction, even when read with the remainder of the court's charge, was prejudicial * * *. Because of the error in giving the instruction, the cause must be reversed.''

In Fry v. Smith, 217 Iowa 1295, 253 N. W. 147, 149, the court held that an instruction which places on the driver of an automobile the *absolute duty to maintain a constant lookout* and use all his senses to avoid the danger of a collision is erroneous as imposing undue burden, and the error is not necessarily cured by subsequent statements limiting the operator's duty to reasonable care.

In that case, this court said, loc. cit. 1300:

''Appellants contend that the instruction thus given imposed * * * a greater duty than is imposed by law, because the law only requires that a driver shall use ordinary care in keeping a lookout and avoiding danger of a collision, while the instruction given imposes an absolute duty upon the driver to keep a constant lookout and to use all his senses to avoid the danger

of a collision. * * * Can it be said * * * that, after having imposed upon the driver the absolute duty to keep a constant lookout and to use all his senses, the jury did not understand that, in using the reasonable care referred to later in the instruction, the driver was not bound by this absolute duty?''

Appellant contends that the instruction given in the case of Shutes v. Weeks, 220 Iowa 616, 624, 262 N. W. 518, 523, was, in effect, similar to the instruction given in the case at bar, and that under the holding therein, the instruction complained of here is not erroneous.

The instruction given in Shutes v. Weeks, supra, upon this question said:

''In operating an automobile *it is the duty of the driver to exercise reasonable and ordinary care* * * * that he may have it under such control as to be able to properly handle and control the same, and in the exercise of ordinary care he should be able to stop it with reasonable celerity at any time or place to avoid danger and injury to the person or property of another.''

An examination of the instruction given in Shutes v. Weeks, supra, will show that the instruction there given was more inclusive than that given in the case at bar, and that it did not impose an absolute duty of avoiding danger upon the defendant, without the necessity of exercising ordinary care.

This instruction was approved as not placing an absolute duty upon the defendant to avoid the collision. It is distinguishable from the instruction given in this case, because it places upon the driver *the duty to exercise reasonable and ordinary care to have it under* ''such control as to be able * * * to stop it with reasonable celerity at any time or place to avoid * * * injury to the person or property of another.''

It is obvious that under the instruction in Shutes v. Weeks, supra, the burden was upon the driver to exercise reasonable and ordinary care to have his car under such control that in the exercise of ordinary care he would be able to stop it with a reasonable degree of celerity to avoid danger to another. No such limitation is contained in the instruction complained of in this case. Instead, the jury would be warranted in inferring that it imposes an absolute duty upon defendant to have his car under such control as to avoid the collision, regardless of his use of ordinary care.

In the ruling on the motion for a new trial, the court held that the instruction given was prejudicial in placing an absolute duty upon the defendant to avoid the collision.

The drivers of automobiles approaching each other have a right to assume that each will observe the statutory requirements. Appellant's contention that a driver must have his car under such control as to be able to avoid a collision under any and all circumstances, would, in effect, require it to be driven in such a manner so as to be able to stop it instanter. Such is not the rule. "The phrase 'having his car under control' does not necessarily mean ability to stop instanter, under any and all circumstances. Such a rule would be impossible of observance." Carruthers v. Campbell, 195 Iowa 390, loc. cit. 392, 192 N. W. 138, 28 A. L. R. 949.

Appellant also contends that instruction No. 14 is not reversible error because of our ruling in the recent case of Swan v. Dailey-Luce Auto Co., 221 Iowa 842, loc. cits. 848–850, 265 N. W. 143, 146, 147. The instant case, however, is distinguishable from that case, because an examination of that case will disclose that the ruling thereon was based upon the court's failure to instruct upon the duty of a driver to stop his car within the assured clear distance ahead, as required by section 5029 of the Code of 1931.

In referring to this statute in Swan v. Dailey-Luce Auto Co., supra, this court said, loc. cit. 848:

"It will be noticed that this statute imposes two duties upon the driver of an automobile. The first is that the driver 'shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface,' street, and other conditions. The second duty imposed is that 'no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.' * * * Generally speaking it may be said that a driver has a car 'under control' if it is moving at the time at such rate of speed and the driver has the mechanism and power of the car under such control that it can be brought to a stop within a reasonable degree of celerity. *A driver of such vehicle is not bound by any hard and fixed rule of conduct and is not required to be able to avoid a collision with a pedestrian or other vehicles on the highway under any and all*

*circumstances.* The test is, did he at the time and place and under all the conditions shown as to the nature of the highway, his speed, the traffic, conditions of atmosphere, a daylight or darkness and all other conditions shown, have the car under such control that if occasion demanded he could stop the same with a reasonable degree of celerity, *but in all cases and under all these circumstances he is only bound to use that degree of care, caution and prudence that an ordinarily careful, cautious and prudent man would have used at the time under the same or similar circumstances in the control and operation of said car.''* (Italics ours.)

The instruction complained of in that case contained no reference whatever to the ''assured clear distance'' portion of that statute, which provides that:

''5029. Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, *and no person shall drive any vehicle upon a highway at a speed greater than will permit him* to bring it to a stop within the assured clear distance ahead.''

The reason for the conclusion reached in Swan v. Dailey-Luce Auto Co., supra, was that the court failed to instruct upon the second duty imposed upon the driver by section 5029, ''that no person shall drive * * * at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.'' That case does not change the rule announced in Carruthers v. Campbell, 195 Iowa 390, 192 N. W. 138, 28 A. L. R. 949; Shutes v. Weeks, 220 Iowa 616, 262 N. W. 518, and other like cases cited, holding that the law requires the driver to use reasonable and ordinary care to have his car under such control, and that it is traveling at such a speed, and that the driver has the mechanism and power under such control, that it can be brought to a stop with a reasonable degree of celerity.

To say the least, instruction No. 14, as given, was confusing and misleading, as it tended to impose upon the defendant the absolute duty of having his automobile under such control as to avoid a collision, without any limitations or explanation of the term ''under proper control''. It cannot be said that an in-

struction requiring a driver to have his car under such control so as to be able to stop it in time to avoid a collision without reference to reasonable and ordinary care, is not prejudicial; nor can it be said that the jury could not have understood that instruction No. 14 imposed an absolute duty upon the defendant to have his car under such control as to avoid the collision, under any and all circumstances.

This instruction specifically told the jury that "it is the law of this state that the driver of a motor vehicle *shall keep the same under proper control at all times* * * *," and that if they found "from all the evidence that the defendant * * * failed to keep his motor vehicle under proper control * * *, and that such failure * * * was a direct cause of the accident * * *, then the defendant would be liable for * * * damages."

It can hardly be claimed that this instruction does not impose an absolute duty upon the defendant to have his car under such control as to avoid injury to others at all times, and under any and all circumstances. Such is the meaning conveyed thereby.

It is the settled rule of law in this state that the lower court has a wide discretion in the matter of granting new trials in jury cases, and that its ruling in granting a new trial will not be disturbed on appeal unless it clearly appears there has been an abuse of its discretion. Flickinger v. Phillips, 221 Iowa 837, 267 N. W. 101; Perry v. Engnell, 198 Iowa 26, 199 N. W. 283; Hunt v. Railway Co., 188 Iowa 1068, 177 N. W. 48; Rupp v. Kohn, 210 Iowa 969, 232 N. W. 174, 175; Morton v. Insurance Co., 218 Iowa 846, 254 N. W. 325.

In Rupp v. Kohn, supra, loc. cit. 971, we said:

"The trial court is vested with a large discretion in passing upon motions for a new trial, and this discretion will not be interfered with, especially when a new trial is granted, unless it appears that there has been an abuse of this discretion. * * * The granting of a new trial is a matter resting largely in the sound discretion of the trial court, and the exercise of this discretion will not be interfered with, where a new trial has been granted, unless it appears to have been abused."

The chief complaint, however, was made to instruction No. 14 hereinabove considered. The motion for a new trial was based also upon errors in other instructions given, but was sus-

tained generally. In view of the necessity of a new trial because of the error complained of in instruction No. 14, we deem a consideration of other errors alleged unnecessary.

It is our conclusion from the record in this case that the court did not abuse its discretion in granting a new trial herein. It necessarily follows that the order of the lower court in granting a new trial is affirmed.—Affirmed.

DONEGAN, C. J., and ALBERT, MITCHELL, STIGER, ANDERSON, PARSONS, and RICHARDS, JJ., concur.